UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
IDEAL STEEL SUPPLY CORP.,                :

                            :

              Plaintiff,       :

                            :

      -against-        :

                            :

JOSEPH ANZA, VINCENT ANZA, and   :
NATIONAL STEEL SUPPLY, INC.,    :

                            :

             Defendants.   :
----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/30/09

02 Civ. 4788 (RMB)

**DECISION & ORDER**

## I.    Introduction

On October 15, 2008, Ideal Steel Supply Corp. ("Plaintiff" or "Ideal") filed a Third Amended Complaint against National Steel Supply, Inc. ("National") and National's owners, Joseph Anza and Vincent Anza (collectively, "Defendants") alleging, among other things, that Defendants "have engaged in an unlawful scheme against Ideal, their main competitor in the local steel market" by "not collecting sales taxes, not reporting cash sales or the income they yield, not paying full sales or income taxes as a result, and using the tax fraud proceeds to fund a new . . . business operation" near Ideal's business in Bronx County, New York, in violation of Section 1962(a) of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961, et seq. (3d Am. Compl., dated Oct. 14, 2008 ("3d Am. Compl."), ¶ 1; see also id. ¶¶ 52–63.) Plaintiff alleges that Defendants' investment of such "racketeering income" to establish and operate a Bronx business location "caused Ideal a permanent loss of sales, profits, and market share." (3d Am. Compl. ¶ 62.) Plaintiff also asserts a state law breach of contract claim against Defendants. (See 3d Am. Compl. ¶¶ 64–74.)[1]

---

[1]    Plaintiff's dispute with Defendants dates back (at least) to September 13, 2002 when Plaintiff alleged in this Court that (i) Defendants did "not charge or collect sales tax on taxable

On December 16, 2008, Defendants moved for judgment on the pleadings pursuant to

Rule 12(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and, alternatively, for

---

sales from its cash-paying non-exempt customers" and did "not report these sales or pay the required sales tax on them to the New York State Department of Taxation and Finance"; (ii) Defendants violated Section 1962(a) of RICO by investing alleged racketeering income or proceeds derived from the conduct of their unlawful "cash, no tax" scheme at their Jamaica location to open National's Bronx location which "directly injured" Ideal because it "lost significant business and market share"; and (iii) Defendants violated Section 1962(c) of RICO by "defrauding the New York State Department of Taxation and Finance of sales tax revenues due on taxable sales" which "directly injure[d] Ideal because the unlawful tax saving . . . attract[ed] customers to make purchases from National which would otherwise have been made from Ideal." (Am. Compl., dated Sept. 13, 2002 ("Am. Compl."), ¶¶ 4, 43, 48, 50, 55, 57; see also id. ¶¶ 37–58.)

On April 1, 2003, this Court dismissed Ideal's earlier RICO claims for failing to set forth "causation" because, among other reasons, Ideal had not alleged that it had "relied on the [fraudulent] sales tax returns Defendants mailed or wired to the New York State Department of Taxation and Finance." Ideal Steel Supply Corp. v. Anza, 254 F. Supp. 2d 464, 468 (S.D.N.Y. 2003). On July 2, 2004, the United States Court of Appeals for the Second Circuit vacated, holding that "Ideal alleged facts sufficient to show that its claimed loss of business was proximately caused by [D]efendants' operation of National's stores through a pattern of racketeering activity." Ideal Steel Supply Corp. v. Anza, 373 F.3d 251, 263 (2d Cir. 2004).

On June 5, 2006, the United States Supreme Court held that Plaintiff's Section 1962(c) RICO claim did not "satisfy the requirement of proximate causation" because, among other reasons, "Ideal's lost sales could have resulted from factors other than [Defendants'] alleged acts of fraud." Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 459, 461 (2006) ("Anza III"). The Supreme Court observed that "private actions for violations of [Section] 1962(a), like actions for violations of [Section] 1964(c), must be asserted under [Section] 1964(c)," which sets forth the RICO proximate cause requirement, but declined to address Plaintiff's Section 1962(a) RICO claim because the Court of Appeals did not address this issue. Id. at 461–62. The Supreme Court, therefore, directed the Court of Appeals to "determine whether [Defendants'] alleged violation of [Section] 1962(a) proximately caused the injuries Ideal asserts," id. at 462, which is the issue presented here.

**Note:** While Defendants' petition for certiorari was pending before the United States Supreme Court, this Court granted Ideal leave to file its Second Amended Complaint, dated April 20, 2005, which, among other things, added allegations that Defendants had "engaged in an 'income tax free sales' scheme . . . to gain a competitive advantage over Ideal 'by [knowingly] filing false income tax returns and defrauding the Internal Revenue Service and the New York State Department of Taxation and Finance[.]'" (Decision and Order, dated Apr. 18, 2005, at 2 (quoting 2d Am. Compl., dated Apr. 20, 2005, ¶ 90).)

2

summary judgment pursuant to Fed. R. Civ. P. 56 arguing that Plaintiff's Section 1962(a) claim

fails because, among other reasons: (1) nothing in the Third Amended Complaint "comes even

remotely close to explaining how the opening and operation of the Bronx location [by National]

proximately caused Ideal to lose sales, profits, and market share"; and relatedly (2) Ideal "cannot

demonstrate . . . whether National's alleged investment of racketeering income into its Bronx

facility is the proximate and direct cause of Ideal's alleged loss of business." (Mem. of Law in

Supp. of Defs.' Mot. for J. on the Pleadings and for Summ. J., dated Dec. 15, 2008 ("Defs.

Mem."), at 1, 12 (emphasis omitted).) Defendants also argue that "supplemental jurisdiction

over the remaining state breach of contract claim [should] be declined." (Defs. Mem. at 24.)

On January 15, 2009, Plaintiff filed an opposition arguing, among other things, that:

(1) Defendants used "criminal funds to create a competitor [in Bronx County, New York]

siphoning [Ideal's] market share"; and (2) "a jury could believe Ideal's fact and expert evidence

of both the market definition and the [adverse] impact of Defendants' Bronx operation on Ideal's

sales." (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for J. on the Pleadings and for Summ. J.,

dated Jan. 14, 2009 ("Pl. Opp'n"), at 1 (citation omitted).) Plaintiff also contends that the Court

should retain jurisdiction over the state claim. (See Pl. Opp'n at 25.)

On February 6, 2009, Defendants filed a reply. (See Reply Mem. of Law in Supp. of

Defs.' Mot. for J. on the Pleadings and for Summ. J., dated Feb. 6, 2009 ("Reply").) The parties

waived oral argument.

**For the reasons set forth below, Defendants' motion for judgment on the pleadings**

**and, alternatively, for summary judgment is granted.**

II.    **Background**

There is, as Associate Justice Antonin Scalia observed, "bitter family animosity between

3

the Anzas (National's principals) and the Brancatos (Ideal's principals)." (3d Am. Compl.

¶ 44(a); see also Tr. of Supreme Court Oral Argument in Anza v. Ideal Steel Supply Corp., 547

U.S. 451 (2006), dated Mar. 27, 2006, at 37:12–14.)

The Anzas and the Brancatos have spent years in the 1990s and in the current decade in

litigation. (See 3d Am. Compl. ¶ 44(b).) In 1994, National and other companies owned and

operated by Joseph Anza and Vincent Anza sued Ideal in New York State Supreme Court,

Queens County "for allegedly interfering with National customers and employees." (3d Am.

Compl. ¶ 65.) That action was discontinued pursuant to a Stipulation of Settlement, dated

January 14, 1997 (the "1997 Agreement"). (See 3d Am. Compl. ¶ 66.) Plaintiff (now) argues

that "Defendants' scheme to siphon business from Ideal by illegal means . . . materially violated

[the 1997 Agreement]" and that "Defendants agreed not to interfere with Plaintiff's business

other than through legitimate and proper competition." (3d Am. Compl. ¶ 51 (internal quotations

omitted).)

Ideal and National are both New York corporations engaged in the sale of steel mill

products. (See Defs. Local Rule 56.1 Statement, dated Dec. 12, 2008 ("Defs. 56.1"), ¶¶ 1, 6; see

also Pl. Local Rule 56.1 Statement, dated Jan. 14, 2009 ("Pl. 56.1"), ¶¶ 1, 6; Decl. of Vincent

Anza, executed Dec. 12, 2008 ("V. Anza Decl."), ¶ 2.) "At all material times, Vincent Anza and

his father, Joseph Anza, Sr., were each 50% shareholders in National." (Def. 56.1 ¶ 3; see Pl.

56.1 ¶ 3; see also V. Anza Decl. ¶ 1.) Giacomo Brancato is Ideal's sole shareholder. (See Dep.

of Giacomo Brancato, dated Jan. 4, 2005 ("Brancato Jan. 4, 2005 Dep."), at 17:6–18:13.)

Plaintiff alleges that "Ideal and National have distributed and sold, in a lumber yard

setting, steel mill products (steel bars, sheets, etc.), purchased from outside New York, and

related hardware, supplies, and services." (3d Am. Compl. ¶ 9.) Ideal and National "have done

much of their business on a 'cash and carry' basis, requiring no minimum order, providing convenient, one-stop shopping for [a] shared customer base [consisting of] professional ironworkers, small steel fabricators, and do-it-yourself homeowners." (Id.) "National sells and delivers its products to customers located in the five boroughs of New York City and in the states of New York, New Jersey, and Connecticut." (Defs. 56.1 ¶ 2; see Pl. 56.1 ¶ 2.) Ideal supplies "steel from its Bronx location to customers in Queens, Brooklyn, Staten Island, Connecticut, and New Jersey." (Defs. 56.1 ¶ 8; see Pl. 56.1 ¶ 8.)

Plaintiff alleges that, from "at least" 1996 to the spring of 2004, Defendants "violated [New York] State Tax Law by not charging or collecting sales tax, not reporting the sales to the [New York] State Tax Department, and not paying those sales taxes to the [New York] State Tax Department" on National's taxable sales from cash-paying non-exempt customers. (3d Am. Compl. ¶ 21.) Defendants acknowledge that, "[p]rior to April 2004, National did not collect sales tax on certain of its cash sales," (Defs. 56.1 ¶ 39; see Pl. 56.1 ¶ 39; Am. Ans. to 3d Am. Compl., dated Nov. 11, 2008, ¶ 21), but started charging sales tax to cash customers thereafter. (See Dep. of Vincent Anza, dated Jan. 11, 2005 ("V. Anza Dep."), at 140:15–21.) National's co-owner, Vincent Anza, alleges that prior to April of 2004 he believed that National's "accountant was calculating the tax and [National was] paying it." (V. Anza Dep. at 129:10–11; see also id. at 123:11–140:21.) Plaintiff also alleges that, from "at least" 1996 to the spring of 2004, National "significantly and intentionally understated its income on federal and state income tax returns," (3d Am. Compl. ¶ 28), and that "Defendants' false income and sales tax filings violated federal mail and wire fraud [laws]," (3d Am. Compl. ¶ 35.)

Ideal and National each have business operations in Jamaica (Queens), New York. (See Defs. 56.1 ¶ 11; Pl. 56.1 ¶ 11; see also V. Anza Decl. ¶ 3.) And, in late 1996, Ideal opened a

business location in Bronx County, New York. (See Defs. 56.1 ¶ 12; Pl. 56.1 ¶ 12.) In January

of 2000, National also opened a business location in Bronx County, New York, (see Defs. 56.1

¶ 19; Pl. 56.1 ¶ 19; see also V. Anza Decl. ¶ 4), and "[t]itle to the land on which National opened

its Bronx location was taken in the name of Easton Development Corp." (Defs. 56.1 ¶ 21; see

Pl. 56.1 ¶ 21.)

Plaintiff alleges that "Defendants could not have opened their Bronx business operation

without their sales and income tax fraud proceeds," (3d Am. Compl. ¶ 36), and that, "[w]ith their

income and sales tax fraud, Defendants not only financed opening a Bronx location competing

with Ideal, but also lured Ideal's customers with the lower prices their tax fraud financed," (3d

Am. Compl. ¶ 46.)

In sum, Plaintiff alleges that "Defendants directly have injured and continue to injure

Ideal by having used and invested their racketeering income to acquire, establish, and operate

Easton Development Corp. and their Bronx business operation, which they could not have done

without their racketeering income, and which caused Ideal a permanent loss of sales, profits, and

market share." (3d Am. Compl. ¶ 62; see also Dep. of Giacomo Brancato, dated Jan. 5, 2005

("Brancato Jan. 5, 2005 Dep."), at 282:6–283:23; Dep. of Ricardo Ortiz, dated Feb. 2, 2005

("Ortiz Dep."), at 106:7–107:20.)

## III.   Legal Standard

"When a court evaluates a RICO claim for proximate causation, the central question it

must ask is whether the alleged violation led directly to the plaintiff's injuries." Anza III, 547

U.S. at 461; see also Bridge v. Phoenix Bond & Indem. Co., 128 S. Ct. 2131, 2142 (2008);

Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 265–68 (1992).

"A motion under Rule 12(c) for judgment on the pleadings is evaluated under the same

6

standard as one pursuant to Rule 12(b)(6) to dismiss the complaint for failure to state a claim."

Young-Flynn v. Kelly, 234 F.R.D. 70, 73 (S.D.N.Y. 2006) (citing DeMuria v. Hawkes, 328 F.3d

704, 706 n.1 (2d Cir. 2003)).  "In reviewing a Rule 12(b)(6) motion, this Court must accept the

factual allegations of the complaint as true and must draw all reasonable inferences in favor of

the plaintiff."  Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).  At the same time, "a plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted);

see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "[P]laintiff must provide the grounds

upon which his claim rests through factual allegations sufficient 'to raise a right to relief above

the speculative level.'"  ATSI Comms., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)

(quoting Twombly, 550 U.S. at 555); see also Gristede's Foods. Inc. v. Unkechauge Nation, 532

F. Supp. 2d 439, 442–43 (E.D.N.Y. 2007).

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law.'"  Ollman v. Special Bd. of

Adjustment No. 1063, 527 F.3d 239, 245 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).  The

moving party bears the burden of informing the district court of the basis for its motion.  See

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The nonmoving party must set forth specific

facts showing that there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986).  "A court reviewing a motion for summary judgment must construe the

facts in the light most favorable to the non-moving party and must resolve all ambiguities and

draw all reasonable inferences against the movant."  Ollman, 527 F.3d at 245 (internal quotations

omitted); see also Uni-Rty Corp. v. Guangdong Bldg., Inc., 464 F. Supp. 2d 226, 230 (S.D.N.Y. 2006).

## IV.   Analysis

### (1)   Proximate Cause:  Fed. R. Civ. P. 12(c)

Defendants argue persuasively that Plaintiff fails to plead facts showing that Ideal's lost sales were "proximately caused" by "the mere creation of National's Bronx facility through the alleged investment of an unspecified amount of RICO proceeds." (Def. Mem. at 11.)  Plaintiff counters, among other things, that "National harmed [Ideal] by . . . funding [National's] Bronx establishment with tax-fraud proceeds." (Pl. Opp'n at 16.)

"To state a claim under section 1962(a), [a] plaintiff must plead an injury proximately caused by the investment of the racketeering proceeds." Pahmer v. Greenberg, 926 F. Supp. 287, 302 (E.D.N.Y. 1996) (citing Ouaknine v. MacFarlane, 897 F.2d 75, 82–83 (2d Cir. 1990)); see also 18 U.S.C. §§ 1962(a), 1964(c). "[A]llegations that illicit income was used or invested in an enterprise, without explaining how such use or investment caused the injuries alleged, fail to state a claim under [Section] 1962(a)." Zaro Licensing, Inc. v. Cinmar, Inc., 779 F. Supp. 276, 283 (S.D.N.Y. 1991).

Plaintiff's Third Amended Complaint is deficient, see Ouaknine, 897 F.2d at 82–83, in that it does not allege facts explaining how Defendants' investment of purported racketeering income to establish and operate its Bronx business location proximately caused Ideal to lose sales, profits, and market share. See Zaro, 779 F. Supp. at 283. Plaintiff's allegations that "Defendants substantially decreased Ideal's sales, profits, and local market share, and eliminated Ideal's dominant market position, by using racketeering proceeds to acquire, establish, and operate their Bronx business operation," (3d Am. Compl. ¶ 43; see also id. ¶¶ 45, 62), are little

8

more than "labels and conclusions," Twombly, 550 U.S. at 555, and do not show how

Defendants "alleged violation [of RICO] led directly to [Ideal's] injuries," Anza III, 547 U.S. at

461. They are insufficient to state a claim under Section 1962(a). See Anza III, 547 U.S. at 461;

Zaro, 779 F. Supp. at 283; see also Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 657

(S.D.N.Y. 1996), aff'd, 113 F.3d 1229 (2d Cir. 1997) ("Plaintiffs' conclusory allegation that

Defendants 'used or invested' income received . . . is insufficient because it fails to allege how

that use or investment injured them[.]"); Schick v. Ernst & Whinney, No. 90 Civ. 1005, 1991

WL 8543, at *8 (S.D.N.Y. Jan. 18, 1991).

Because the Court dismisses Plaintiff's Section 1962(a) RICO claims based on the

pleadings, it need not reach Defendants' motion for summary judgment. See A/D SAT v. Assoc.

Press, 885 F. Supp. 511, 522 (S.D.N.Y. 1995) ("Having found that [plaintiff's] claim should be

dismissed based on the pleadings, this Court need not reach the [same] claim on defendant's

summary judgment motion."); see also Abbott Labs. v. Diamedix Corp., No. 96 Civ. 5201, 1998

WL 901671, at *6 (N.D. Ill. Dec. 18, 1998).

If the Court were to reach the Plaintiff's claim on summary judgment, as explained

below, the claim would fail.

### (2)    Proximate Cause: Fed. R. Civ. P. 56

Defendants argue, among other things, that "Ideal's alleged lost sales could have resulted

from a multitude of factors [e.g., decisions of customers, poor quality merchandise, poor

management decisions, competition from other steel companies, and reasons relating to the

strength or weakness of the economy] other than the purported investment of RICO proceeds

into its Bronx facility" and were not proximately caused by "National's alleged investment of

purported RICO proceeds into its Bronx [County], New York facility." (Defs. Mem. at 1, 13.)

Plaintiff counters, among other things, that alleged injuries to Ideal's Bronx business by Defendants are not "too speculative for proximate cause" because Ideal and National "share identical business models," "have nearby locations," and "Ideal's Bronx sales dropped when Defendants' Bronx site opened and recovered when Defendants lessened their tax fraud, corroborating that the lost sales went to Defendants." (Pl. Opp'n at 16, 17.)

When factors other than the defendant's alleged misconduct are an intervening direct cause of a plaintiff's injury, that injury cannot be said to have occurred by reason of the defendant's actions. See McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 226 (2d Cir. 2008); see also Benedetti v. Nissenbaum, No. 90 Civ. 7206, 1993 WL 118489, at *1 (S.D.N.Y. Apr. 12, 1993) ("[B]oth the U.S. Supreme Court and the Second Circuit have treated the proximate causation aspect of RICO standing as one of law for the court, rather than one of fact for trial.").

Assuming the Court were to reach Defendants' alternative (summary judgment) basis for dismissal, Defendants would prevail because, among other reasons, Plaintiff fails to establish a genuine issue of material fact regarding causation. See Uni-Rty Corp., 464 F. Supp. 2d at 230–31. Indeed, the record reveals that there were intervening factors that may have caused Ideal's alleged lost sales, profits, and diminution in market share. See Amsterdam Tobacco Inc. v. Philip Morris Inc., 107 F. Supp. 2d 210, 218–19 (S.D.N.Y. 2000). For one thing, Ideal's principal, Giacomo Brancato, testified that Ideal's Bronx location had "thousands of customers that buy thousands of products for many different uses." (Brancato Jan. 5, 2005 Dep. at 224:14–15.) The decisions of individual purchasers, i.e., in this case presumably not to buy steel products from Ideal, have been held to constitute an independent intervening act between the alleged RICO violations and the alleged injuries. See Amsterdam Tobacco, 107 F. Supp. 2d at 219; see also Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 485 (D.N.J. 1998)

10

("numerous events had to occur before defendants' acts caused [plaintiff] to lose sales," such as "consumers [having] to decide to purchase [drugs] manufactured by [defendants] instead of purchasing [plaintiff's] generic [drugs]"); Barr Labs., Inc. v. Quantum Pharmics, Inc., 827 F. Supp. 111, 116 (E.D.N.Y. 1993); Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc., No. 92 Civ. 2379, 1993 WL 155503, at *3 (N.D. Ill. May 10, 1993).[2]

Second, Mr. Brancato testified that at various times between 1996 and 2003 Ideal received and accepted from its vendors steel products that were "bent and rusty." (Brancato Jan. 5, 2005 Dep. at 331:2; see id. at 313:19–335:14; 313:19–314:18 ("Q: Mr. Brancato, I'm going to show you what has been marked Exhibit Number 64 and ask you if you can tell us what this is. A: It's a letter from my company to a vendor. . . . Listing material that was defective and we were asking for a credit[.] Q: Do you recall what was wrong with these products? . . . You tried to sell the products, but the customers wouldn't buy them? A: The defects with these products rendered them unsellable.")); see also Benedetti, 1993 WL 118489, at *3; Sheperd v. Am. Honda Motor Co., 822 F. Supp. 625, 630 (N.D. Cal. 1993).

---

[2]     Plaintiff's expert (economic) report by Dr. David Mishol, dated March 11, 2005, which purports to show "a two-player market where National's Bronx sales came from Ideal's," (Pl. Mem. at 10), is inadmissible upon summary judgment because the report is unsworn. Gorman v. Experian Info. Solutions, Inc., No. 07 Civ. 1846, 2008 WL 4934047, at *6 n.7 (S.D.N.Y. Nov. 19, 2008); see also Berk v. St. Vincent's Hosp. & Med. Ctr., 380 F. Supp. 2d 334, 352 (S.D.N.Y. 2005) ("Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P. 56(e).") And, Mr. Brancato's testimony showed that Ideal's Bronx operation had several competitors. (See Brancato Jan. 4, 2005 Dep. at 70:16–20 ("Q. Whom did you consider to be your competitors in the Bronx from 1997 through the end of 1999? A. Almore Steel, for as long as they lasted. . . . Q. Who else? A. Competitors in the Bronx, no major competitors. I did have competition but not on a large scale. Q. Okay. Who else provided competition [to] your business, although not on a large scale? A. Not on a full mix of products we sold, but also Belco Steel [which] went out of business. . . . Q. Any others? A. Colonial Steel. Q. There're still in business, right? A. Yes.); Brancato Jan. 5, 2005 Dep. at 222:18–21 ("Q. Isn't Eastern Steel a competitor of yours? . . . A. On some level he might be.); Ortiz Dep. at 59:8–60:2; 147:3–148:9.); see also Benedetti, 1993 WL 118489, at *3; Sheperd v. Am. Honda Motor Co., 822 F. Supp. 625, 630 (N.D. Cal. 1993).

Third, Ideal's business decisions – e.g., to lower its prices to compete with National which would "sometimes" lead to a sale and "sometimes" not (see Brancato Jan. 5, 2005 Dep. at 227:18) – constituted an independent intervening act between the alleged RICO violations and Ideal's alleged injuries. See Holmes, 503 U.S. at 273; see also Benedetti, 1993 WL 118489, at *3 (no proximate cause "as a matter of law" where, among other things, "court [would] first have to determine whether poor business practices, changing market conditions, [and] competition from similar businesses . . . led to the alleged [injuries of plaintiff]"); Sheperd, 822 F. Supp. at 630 ("a multitude of imaginable factors may have contributed to [plaintiff's] diminished profitability," such as "managerial decisions," "pricing strategy," "local economic trends," "consumer demand," and the "actions undertaken by [plaintiff's] competitors").

In rejecting Plaintiff's Section 1962(c) RICO claims, the Supreme Court observed in Anza III that "it would require a complex assessment to establish what portion of Ideal's lost sales were the product of National's [conduct]" because "[b]usinesses lose and gain customers for many reasons." Anza III, 547 U.S. at 459. This is no less true here. Plaintiff's Section 1962(a) RICO claim raises the same concerns in view of Plaintiff's assertions that its injuries include "a permanent loss of sales, profits, and market share." (3d Am. Compl. ¶ 62.) That is, it would be purely speculative, see Anza III, 547 U.S. at 459, for this Court to conclude that Ideal's alleged injuries resulted from Defendants' conduct as opposed to other factors, such as the decisions of individual customers, the quality of Ideal's steel products, Ideal's management of its business, actions taken by other steel companies in the area, and reasons relating to the overall economy. See City of New York v. Smokes-Spirits.Com, Inc., 541 F.3d 425, 442 (2d Cir. 2008) (RICO claims brought by competitors "may involve a host of market factors unrelated to the alleged RICO violation [and] following the causal chain and measuring damages [would] involve

12

evidentiary complexities beyond what a factfinder should be expected to reasonably or reliably parse through."). "The element of proximate causation . . . is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation." Anza III, 547 U.S. at 460.

**Supplemental Jurisdiction**

Having dismissed the RICO claims, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c). See Dempsey v. Sanders, 132 F. Supp. 2d 222, 229 (S.D.N.Y. 2001). Such claims are dismissed without prejudice. See Smallwood ex rel. Hills v. Lupoli, No. 04 Civ. 686, 2007 WL 2713841, at *11 (E.D.N.Y. Sept. 14, 2007); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"); Kavit v. A. L. Stamm & Co., 491 F.2d 1176, 1180 (2d Cir. 1974).

**V.      Conclusion**

For the reasons set forth above, Defendants' motion for judgment on the pleadings and, alternatively, for summary judgment [#117] is granted. The Clerk is respectfully requested to close this case.


Dated: New York, New York
      June 30, 2009

_RMB_

**RICHARD M. BERMAN, U.S.D.J.**