UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
IDEAL STEEL SUPPLY CORP.

     Plaintiff,

   - against -

JOSEPH ANZA, VINCENT ANZA,
NATIONAL STEEL SUPPLY, INC.,

     Defendant.
------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/23/13

02 Civ. 4788 (RMB) (AJP)

**DECISION & ORDER**

  Defendants Joseph Anza, Vincent Anza, and National Steel Supply, Inc. (collectively "National Steel" or "Defendants") have filed a post-trial motion, dated October 21, 2013, in this intensely litigated intra family civil RICO action (under 18 U.S.C. § 1962(a)) for sanctions and criminal referral to the United States Attorney.[1] The motion is against Jack Brancato, owner of Plaintiff Ideal Steel Supply Corp. ("Ideal Steel" or "Plaintiff"), and his brother Paul Brancato, attorney for and employee of Ideal Steel ("Q: So do you have a position and/or title with the company now? PAUL BRANCATO: Right now I'm not-- I don't have a formal position, but I do work there. I do help out, so... Q: Well, are you a laborer? PAUL BRANCATO: Well, like I said, there's really no title. I fill in for my brother when he can't be there. We both have to be here today, but if we both weren't here, I would be manning the store."). (Trial Tr., dated Oct. 8, 2013 ("10/8/13 Tr."), at 29:19–30:3; Defs.' Mem. of Law in Supp. of Its Motion for Sanctions and Criminal Referral, dated Oct. 21, 2013 ("Def. Mem."), at 1; see also Anza v. Ideal Steel Supply

---

[1] For a history of this case see Ideal Steel Supply Corp. v. Anza, 254 F. Supp. 2d 464 (S.D.N.Y. 2003) ("Ideal Steel I"); Ideal Steel Supply Corp. v. Anza, 373 F.3d 251 (2d Cir. 2004) ("Ideal Steel II"); Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 126 S. Ct. 1991 (2006) ("Ideal Steel III"); Ideal Steel Supply Corp. v. Anza, No. 02 Civ. 4788(RMB), 2009 WL 1883272 (S.D.N.Y. Jun. 30, 2009) ("Ideal Steel IV"); Ideal Steel Supply Corp. v. Anza, 652 F.3d 310 (2d Cir. 2011) (Cabranes, J. dissenting) (Ideal Steel V"); Anza v. Ideal Steel Supply Corp., 132 S. Ct. 1636 (2012) (denying cert.) ("Ideal Steel VI").

Corp., 547 U.S. 451, 126 S. Ct. 1991 (2006); Ideal Steel Supply Corp. v. Anza, 652 F.3d 310 (2d Cir. 2011).) In their motion, Defendants accuse the Brancatos of: (1) "potential witness tampering and/or subornation of perjury . . . in connection with the acquisition and submission of the Gopaul Declaration [a document dated January 12, 2009 which was submitted in this case in opposition to National Steel's motion on the pleadings]"; and (2) "potential perjury . . . by testifying under oath in open court before this Court that Paul Brancato allegedly spoke to Ramcharran Gopaul in connection with the matters contained in the Gopaul Declaration in advance of its execution (which appears to be in conflict with the deposition testimony of Ramcharran Gopaul denying that he had such conversation with Paul Brancato)." (Def. Mem. at 1.)

In their opposition to Defendants' motion, dated November 11, 2013, the Brancatos respond that: (1) they and Ideal Steel did not "commit[] perjury or fraud" because they "thought the entire . . . [Gopaul] Declaration was fully true testimony"; (2) "a perjury or fraud finding [should not] arise from Gopaul and the two Brancatos having spotty memories in October 2013 about whether Gopaul spoke . . . with only Jack, or with Paul too, before the [January 2009 Gopaul] Declaration." (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Sanctions and Criminal Refferal, dated Nov. 10, 2013, at 8–9, 12.)

While the ability to fashion an appropriate sanction for conduct which abuses the judicial process is a "primary aspect" of a court's inherent powers, Chambers v. Nasco, Inc., 501 U.S. 32, 44–45, 111 S. Ct. 2123 (1991), the Court concludes that (i) "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion," id.; see also Sakon v. Andreo, 119 F.3d 109, 113 (2d Cir. 1997); Mickle v. Morin, 297 F.3d 114, 126 (2d Cir. 2002); N.A.S. Import, Corp. v. Chenson Enter., Inc., 968 F.2d 250, 254 (2d Cir. 1992); Unite Here v. Cintas Corp., 500 F. Supp. 2d 332, 334 (S.D.N.Y. 2007), and (ii) the jury verdict on October 16, 2013 following eight

2

days of trial—finding that Joseph Anza, Vincent Anza, and National Steel were not liable for civil RICO or breach of contract—is at this time an adequate "sanction." (Judgment, dated Oct. 21, 2013, at 3–5; Trial Tr., dated Oct. 16, 2013; see also Patterson v. Balsamico, 440 F.3d 104, 116 (2d Cir. 2006).)

The Court's rejection of sanctions and a criminal referral at this time should not be viewed as condoning the Brancatos' very troubling behavior, including Jack Brancato's involvement in the preparation of the January 12, 2009 Declaration of Ramcharran Gopaul ("Gopaul Declaration") and his brother Paul Brancato's contacts before and during the trial of this matter with Gopaul, whom they had scheduled to appear as a witness on behalf of Ideal Steel. (Trial Tr., dated Oct. 10, 2013 ("10/10/13 Tr."), at 127:16–25, 134:14–135:12, 190:16–20, 191:4–14, 192:19–20, 194:19–22, 199:22–200:2, 201:1–203:2.)

Jack Brancato's seeming misconduct had to do with his principal role in the preparation of the Gopaul Declaration, which, as noted, had been submitted to the Court on January 15, 2009 in support of Ideal Steel's opposition to National Steel's December 16, 2008 motion for judgment on the pleadings. The Declaration falsely stated that it was based "upon my own personal knowledge." (Letter from Michael Levine to Hon. Richard M. Berman, dated Oct. 10, 2013, at Ex. B.) Gopaul testified at his October 9, 2013 deposition—which had been authorized by the Court on the eve of Gopaul's scheduled testimony on behalf of Ideal Steel— that, in fact, he had not himself written the Declaration, and he had no personal knowledge of the facts contained within it, particularly in Paragraph 4 of the Declaration.[2] (Affirmation of Michael Levine in Supp. of Def.'s Mot. for Sanctions and Criminal Referral, dated Oct. 21, 2013, at 5.) Gopaul testified:

---

[2] Paragraph 4 of the Gopaul Declaration stated the following:

> Q: You haven't bought from [the suppliers listed in Paragraph 4], have you?
> A: No.
> Q: So you don't know their business details?
> A: Right, I don't know where they are located either.
> Q: Have you heard the names?
> A: I saw the truck named Bushwick on the truck.
> Q: You never went and tried to buy there?
> A: No.

(Letter from Michael Levine to Hon. Richard M. Berman, dated Oct. 10, 2013, at 2.) To add insult to injury, Gopaul's own name was misspelled in three places in the Gopaul Declaration. (Gopaul Declaration at 1.) Further, it appears that Jack Brancato prepared the Gopaul Declaration without first ascertaining whether the information in the Declaration was true. (10/10/13 Tr. at 127:16–25 ("PLAINTIFF'S ATTORNEY TIM KIEFER: [A]fter you gave [Gopaul] the unsigned declaration what happened next with the declaration itself. JACK BRANCATO: Okay, we met and I said this is the declaration that was explained to you and I want you to look it over, and we read it together, and, you know, I said is that all true. H e said yes. So I said okay, take it with you and make sure that it's all right. And if it is, then sign it and bring it back to me. And if it's not, then let me know what isn't right. MR. KIEFER: Did he sign it and give it back to you? JACK BRANCATO: He did."); at 129:11–130:16 ("MR. LEVINE: You came to learn that the declaration was false, right?

---

> "I cannot obtain my steel from large suppliers like Bushwick, Belco, Certified, Colonial, or Huntersponit for several reasons.
>   a. They sell only steel mill products like beams, bars and sheets, not related products I often need like designs, paint fittings, etc.
>   b. They have large minimum orders and I typically buy small quantities, because I cannot anticipate the steel pieces or supplies I need for upcoming jobs (which products, what size steel, how many, and how soon), and I cannot buy a lot of steel at once (my truck is small and my shop lacks storage space).
>   c. Their trucks are too large to fit in my shop's small driveway.
>   d. They do not offer immediate delivery, typically making you wait all the next day for their truck to arrive, and they have limited pickup hours.
>
> (Gopaul Declaration at 1.)

4

JACK BRANCATO: I learned this morning that parts of it weren't accurate. MR. LEVINE: Where did the information come from that went into the declaration? JACK BRANCATO: It came from discussion between Paul and -- my brother Paul and Gopaul. . . . MR. LEVINE: Now, you know that Mr. Gopaul testified that he never spoke to Paul, right? JACK BRANCATO: I didn't know that. MR. LEVINE: You haven't seen a transcript? JACK BRANCATO: No. MR.LEVINE: So is it your testimony that Mr. Gopaul gave that information to your brother Paul and not to you? JACK BRANCATO: That's my recollection, that, that Paul said that, you know, [Ideal Steel's attorney] Scott [Moss] had this, the declaration, and that Gopaul was willing to sign it.").)

Nor is the Court condoning other behavior of Paul Brancato, himself an attorney, who has testified for Ideal Steel. (10/8/13 Tr. at 29:19–30:3.) For one thing, Paul Brancato conceded that he met with Gopaul before trial, (10/10/13 Tr. at 190:16–20, 191:4–14 ("PAUL BRANCATO: But in connection with this case, we definitely had, I remember one meeting in a bagel store with one of our attorneys, some, some months ago. And I remember meeting with [Gopaul] the week before we started this trial [on October 7, 2013] together with counsel . . . Q: What were the purposes of your meeting in the bagel store and wherever else in the last few weeks? PAUL BRANCATO: I think he was on our potential witness list as somebody who was going to come and testify so the lawyers asked me to coordinate a meeting with him. Q: To talk about what? PAUL BRANCATO: We talked about where he would be testifying, you know, what, what types of questions might be asked. That was it. Q: About his testimony? PAUL BRANCATO: Basically, yeah.")). Second, Paul Brancato also acknowledged that he arranged for transportation of Gopaul to the Courthouse at 500 Pearl Street in Manhattan during trial on October 10, 2013. (Id. at 194:19–22 ("Q: You sent a car for him this morning to bring him to court? PAUL BRANCATO: I did ask a friend of mine to pick him up and bring him to court, yes.")) Third, Paul Brancato also confirmed that he had a phone

5

conversation with Gopaul on the evening of October 9, 2013 after Gopaul's deposition and prior to Gopaul's impending testimony. (Id. (MR. LEVINE: Did you try to contact Mr. Gopaul? PAUL BRANCATO: I did contact Mr. Gopaul to make sure that he made it home. Q: You contacted him after his deposition? THE WITNESS: Yes, because when I spoke to [Plaintiff's counsel] Mr. Moss, I mentioned, I said, did you get, actually called him back because I was, he mentioned that Mr. Gopaul was here all that time [waiting to testify] and that he might be coming back tomorrow. So I said, I called Mr. Moss back and I said, By the way, did you do something to get Mr. Gopaul a ride home because he was in court all day. And Mr. Moss said, you know, with all that was going on, I don't know if I told him to take a cab or if he, you know, so I was concerned about that, first of all. And also the possibility that, you know, he might have to come back. So I reached out to him and I got a hold of him. He had made it home. It was already about, like I said, 9:00 [p.m]. MR. LEVINE: Did you ask him what happened at the deposition? PAUL BRANCATO: No.").)

Jack and Paul Brancato also testified that during the trial they traveled to and from Court together and had discussions while in the courthouse at 500 Pearl Street. Id. at 134:14–135:12 ("MR LEVINE: Now, this morning, Mr. Brancato, you were in the witness room outside this courtroom, correct? JACK BRANCATO: Yes. MR LEVINE: This morning? JACK BRANCATO Yes. MR. LEVINE: And you were there with your brother Paul, correct? JACK BRANCATO: Yes. MR. LEVINE: And you and Paul had a discussion, correct? JACK BRANCATO: Yes. MR. LEVINE: And then Paul came out after that discussion and came over to Mr. Kiefer, correct? JACK BRANCATO: Yes. MR. LEVINE: And then Mr. Kiefer added something to his notes of his examination of you, correct? JACK BRANCATO: I don't know about that. MR. LEVINE: All right. What did you say to your brother that prompted him to come and speak to Mr. Kiefer? JACK BRANCATO: I just said to Paul can, am I allowed to talk to you, and he said no and he left.

As noted, the Court has not imposed sanctions principally because any misbehavior of the Brancatos was substantially "remedied" at trial. (See Judgment, dated Oct. 21, 2013, at 3-5; Trial Tr., dated Oct. 16, 2013; 10/10/13 Tr. at 13:14-15.) That is, after eleven years of litigation in this Court, the Second Circuit Court of Appeals, and the United States Supreme Court, Plaintiffs lost their entire case before a jury of their peers. (See Judgment, dated Oct. 21, 2013, at 3-5; Trial Tr., dated Oct. 16, 2013.) In addition, because of the infirmities revealed at the October 9, 2013 deposition of Gopaul, Ideal Steel was constrained to withdraw Gopaul as a witness at trial. (10/10/13 Tr. at 13:14-15.) Without Gopaul, Ideal Steel apparently could not present any witnesses who were customers of Ideal Steel and National Steel to attempt to establish that National Steel's opening of a Bronx location damaged Ideal Steel. See id.

At the same time, Defendants' counsel was able to cross examine Jack Brancato (who was still on witness stand at the time of the Gopaul deposition) and Paul Brancato (who was recalled as a witness) about the preparation of the January 12, 2009 Gopaul Declaration and about contacts among Jack and Paul Brancato and Gopaul, in an effort to impeach their credibility as the key witnesses for the Plaintiff. See (Pl. Mem. at 8 ("Where, as here, a witness testifies differently from his affidavit at trial, the proper remedy is exactly what happened at trial: discrediting him by eliciting 'testimony to explain the difference between the [witnessps] affidavit and . . . trial testimony, and the reasons for the difference.") (quoting Patterson v. Balsamico, 440 F.3d 104, 116 (2d Cir. 2006); see also U.S. v. Wilson, 501 Fed. App'x 416, 419 (6th Cir. 2012).) And, as noted, the outome of the case was that Plaintiff obtained no recovery. (Judgment, dated Oct. 21, 2013, at 3-5; Trial Tr., dated Oct. 16, 2013.)

And, while the Court respectfully declines to refer this civil case for criminal investigation, the Court is constrained to conclude, for the reasons stated above, that the Brancatos did appear to

7

act questionably with respect to both the preparation of the Gopaul Declaration and the various interactions among the Brancatos and Gopaul and counsel prior to and during the trial of this matter. Should counsel for National Steel wish to pursue this matter, he is, of course, free to follow up with appropriate authorities on his own.

**For the reasons stated above, Defendants' October 21, 2013 motion (# 231) for sanctions and criminal referral is denied.  See Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999).**

Dated: New York, New York
December 23, 2013

_____
RICHARD M. BERMAN, U.S.D.J.